309 Ga. 549
FINAL COPY

S20A0943. MILLER v. THE STATE.

ELLINGTON, Justice.

A jury found Robert Miller guilty of malice murder, aggravated assault, and associated firearms charges in connection with the shootings of Antonio Robinson, Martaveous Lawrence, and Christopher Sheppard, which left Robinson dead.[1] On appeal, Miller

---

[1] The shooting occurred on April 21, 2012. A Muscogee County grand jury returned an indictment on January 28, 2014, charging Miller and Javonta Harris with malice murder (Count 1), felony murder predicated on the aggravated assault against Robinson (Count 2), aggravated assault against Robinson (Count 3), aggravated assault against Lawrence (Count 5), aggravated assault against Sheppard (Count 7), and possession of a firearm during the commission of a crime predicated on the three aggravated assaults (Counts 4, 6, and 8). At a jury trial against Miller alone that ended on September 15, 2016, Miller was found guilty on all counts. By judgment entered on October 11, 2016, the trial court sentenced Miller to life imprisonment for malice murder (Count 1), 20 years in prison for the aggravated assault against Robinson (Count 3) to run consecutively to Count 1, five years in prison for the first firearms charge (Count 4) to run consecutively to Count 3, 20 years in prison for the aggravated assault of Lawrence (Count 5) to run concurrently with Count 3, 20 years in prison for the aggravated assault against Sheppard (Count 7) to run concurrently with Count 3, and five years in prison for the remaining firearms charges (Counts 6 and 8) to run concurrently with Count 4. The judgment indicated that the felony murder verdict (Count 2) merged with the malice murder conviction, although the felony murder verdict was actually vacated by operation of law.

contends that the trial court committed plain error in excusing a juror, who was found to be communicating privately with the presiding judge's secretary, without first conducting a hearing to determine the circumstances of the contact, the impact on the juror, and whether the contact was prejudicial to Miller. For the reasons explained below, we affirm, except that we vacate in part to correct a sentencing error.

Viewed in the light most favorable to the verdicts, the evidence showed the following. At 2:00 a.m. on April 21, 2012, Miller and Javonta Harris were leaving a nightclub in Columbus when they encountered Robinson, Lawrence, and Sheppard talking to Harris's girlfriend and other women outside the club. Harris approached Lawrence and told him to leave or he was "going to shoot that [stuff] up" and "wet [them] up." Miller pulled up his shirt and showed

---

*Stewart v. State*, 299 Ga. 622, 627-628 (3) (791 SE2d 61) (2016). No sentence was authorized for Count 3, and we have corrected that error in Division 3, infra. Miller filed a timely motion for a new trial, which he amended on January 7, 2019. After a hearing on August 8, 2019, the trial court denied Miller's motion for a new trial on September 25, 2019. Miller filed a timely notice of appeal, and his appeal was docketed in this Court for the April 2020 term and submitted for decision on the briefs.

Lawrence that he had a handgun tucked into his waistband. Lawrence got into Robinson's Jeep Cherokee with Robinson and Sheppard, and they drove to another club. Harris and Miller followed in Miller's Kia Sorento, with Harris driving.

In the parking lot of the second club, the Sorento pulled up beside the Cherokee, and Miller taunted Lawrence and the others about being "scared." Robinson pulled out of the parking lot, and Harris and Miller continued to follow. Two or three shots were fired toward the Cherokee; Lawrence saw the muzzle flashes coming from the passenger side of the Sorento. Robinson continued driving while multiple shots were fired from the Sorento. When Robinson was hit in the head, Sheppard grabbed the steering wheel, but the Cherokee rolled onto a residential property and hit some steps. Harris executed a U-turn in the Sorento and passed the Cherokee again. More shots were fired from the Sorento, this time from the driver's side. Lawrence called 911. Robinson was alive when the responding officer arrived but later succumbed to the gunshot wound to the head. Multiple .380 shell casings were recovered from the scene of

the shooting. The guns used in the shooting were not recovered.

After the shooting, Harris removed many shell casings from Miller's Sorento. Days after the shooting, investigators executed a search warrant of Miller's apartment and his Sorento. In Miller's bedroom closet, investigators found ammunition that matched the .380 caliber of the fatal bullet that was recovered during Robinson's autopsy and found one .380 shell casing in the passenger-side door pocket of the Sorento. Harris testified that he had sold one of the guns used in the shooting and dropped the other into the Chattahoochee River.

In a pretrial statement to investigators that was admitted at trial, Tatiana Vaughn, Miller's girlfriend, said that Miller told her that he shot someone. In another pretrial statement that was admitted at trial, Miller's friend, Andrew Edge, also stated that Miller admitted shooting at the victims.

1. Miller does not challenge the sufficiency of the evidence. Nevertheless, as has been our customary practice in murder cases, we have independently reviewed the record and conclude that the

evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Miller was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Miller contends that the trial court committed plain error in excusing a juror, who was found to be communicating privately with the judge's secretary, without first conducting a hearing to determine the circumstances of the contact, the impact on the juror, and whether the contact was prejudicial to Miller, relying on *Remmer v. United States*, 347 U. S. 227 (74 SCt 450, 98 LE 654) (1954), federal circuit court decisions, and Georgia cases.

The record shows that the allegedly improper communication between a juror and the judge's secretary was discovered on the third day of Miller's trial. After the morning recess, the judge informed the attorneys that she had learned that her secretary had

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (___ SE2d ___) (2020). The Court began assigning cases to the December term on August 3, 2020.

been texting with a juror, adding that the secretary said it was "[n]othing about the trial. I think there was some joke about whether or not I was going to provide doughnuts." The judge offered to have her secretary come up and show the texts, and Miller's attorney replied, "Out of an abundance of caution, I think it would be good." After the attorneys reviewed screen shots of the texts, which were printed out and designated Judge's Exhibit 1, Miller's attorney requested, "out of an abundance of caution" because there was "the hint of impropriety," to dismiss the juror and substitute the first alternate juror. Initially, the prosecutor objected on the basis that nothing that was said "warrant[ed the juror's] being dismissed," but the prosecutor added "I don't have any strenuous objection either way. I'll leave it up to the judge." The judge found that nothing in the texts indicated "any undue influence" or discussion of the evidence or other improper conduct. Although the judge did not conclude that the communications "would necessarily [a]ffect anything," she announced that, absent a strenuous objection by the State, she would go ahead and excuse the juror. At that point, Miller

did not pursue any questioning of the juror who communicated with the judge's secretary, nor of any other juror serving. At no point during trial did Miller object to excusing the juror without further proceedings and replacing her with one of the two alternate jurors. After the juror was excused, the trial of the case continued to its conclusion.

Because Miller failed to seek any investigation into or hearing about the juror communication or its effect on other jurors before the trial court acceded to Miller's request to excuse the juror and seat an alternate, the error Miller now asserts was not preserved for ordinary appellate review. See *Bozzie v. State*, 302 Ga. 704, 709 (3) (808 SE2d 671) (2017); *Grimes v. State*, 296 Ga. 337, 348 (4) (a) (766 SE2d 72) (2014); *Ensley v. State*, 294 Ga. 200, 203 (2) (751 SE2d 396) (2013). And plain-error review is not available for this issue. In Georgia, plain-error review is

> limited to the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), and, for cases tried after January 1, 2013,

> with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the court. OCGA § 24-1-103 (d).

*Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (citations and punctuation omitted). This Court will not extend plain-error analysis to other claims of error in the absence of a specific provision by the General Assembly. Id. Consequently, Miller presents no basis for reversal. Id.

3. Although Miller does not raise the issue on appeal, we have identified a merger error in his sentencing. When there is "no evidence to suggest the occurrence of an aggravated assault independent of the act which caused the victim's death," as in this case, a jury's guilty verdict on the aggravated assault merges as a matter of fact with the malice murder verdict for sentencing purposes. *Favors v. State*, 296 Ga. 842, 848 (5) (770 SE2d 855) (2015) (citation and punctuation omitted). Accordingly, we vacate Miller's conviction and sentence for aggravated assault against Robinson (Count 3).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED AUGUST 10, 2020.

Murder. Muscogee Superior Court. Before Judge Gottfried.

*Ross & Pines, Noah H. Pines, Andrew S. Fleischman*, for appellant.

*Julia F. Slater, District Attorney, Benjamin E. Gephardt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.